**In re Milo L. PRISUTA and Violet G. Prisuta, Alleged Debtors.**

**Bankruptcy No. 90–2418.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 30, 1990.

Ronald D. Morelli, Meyer, Unkovic & Scott, Pittsburgh, Pa., for petitioning creditors.

Rex Downie, Jr., Beaver Falls, Pa., for Milo L. Prisuta and Violet G. Prisuta.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is an involuntary Chapter 7 petition brought by Bank One Cleveland, Century Surety Company, Alliance Indemnity Insurance Company, and National American Insurance Company ("petitioners") against Milo and Violet Prisuta ("alleged debtors").

Petitioners assert in their petition that they hold claims against alleged debtors aggregating approximately $1,000,000.00,

which claims purportedly are not subject to bona fide dispute. They further allege that alleged debtors generally are not paying their debts as they become due.

Alleged debtors contend that, aside from the above claims, they are paying their debts as they become due. In addition, alleged debtors aver that petitioners' claims are subject to a bona fide dispute. Accordingly, alleged debtors maintain that the involuntary petition consequently should be dismissed.

In accordance with the reasoning hereinafter set forth, the involuntary petition will be dismissed as the claims of petitioners are subject to a bona fide dispute.

## I

### FACTUAL BACKGROUND

Alleged debtors guaranteed payment of debts owed by Shaker Mechanical Corporation to petitioners. Alleged debtor Milo Prisuta is President and a principal of Shaker Mechanical.

On August 1, 1989, Shaker Mechanical filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Ohio.

Judgment was confessed against alleged debtors and in favor of Bank One Cleveland in the Court of Common Pleas of Cuyahoga County, Ohio, on August 17, 1989, in the amount of $350,577.53. That judgment subsequently was entered of record in the Court of Common Pleas of Beaver County, Pennsylvania.

On April 6, 1990, default judgment was entered in the United States District Court for the Northern District of Ohio against alleged debtors and in favor of Century Surety Company in the amount of $192,000.00. Default judgment was also entered at that same time against alleged debtors and in favor of Alliance Indemnity Insurance Company in the amount of $438,000.00. None of these judgments has been satisfied.

The claim by National American Insurance Company, in the amount of $96,071.95, has not been reduced to judgment.

This involuntary petition was brought by petitioners on August 8, 1990.

## II

### ANALYSIS

11 U.S.C. § 303(b)(1) provides that:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

> (1) by three or more entities each of which is either a holder of a claim against such person that is *not* contingent as to liability or *the subject of a bona fide dispute* ... if such claims aggregate at least $5,000.00 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims (emphasis added).

11 U.S.C. § 303(h) provides that:

(h) ... [if the petition is timely controverted], after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(i) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute ...

Alleged debtors do not dispute that at least three creditors hold claims against them or that said claims aggregate at least $5,000.00 more than the value of any liens on alleged debtors' property which secure such claims. The sole issue presented in this case is whether petitioners' claims are subject to bona fide dispute for purposes of § 303 of the Bankruptcy Code.

■ The test for determining whether there is a bona fide dispute for purposes of § 303 is whether there is a genuine issue of material fact that bears upon debtor's liability or a meritorious contention as to the application of law to undisputed facts. *See BDW Assocs. v. Busy Beaver Building Centers*, 865 F.2d 65, 66 (3rd Cir.1989). If either of these disjuncts is met, the involuntary petition must be dismissed. *Id.*

■ The court must, when applying this test, ascertain whether there is an objective basis for either a legal or a factual dispute as to the validity of the debt. *See Matter of Busick*, 831 F.2d 745, 749 (7th Cir.1987). The outcome of a dispute need not be resolved, only its presence or absence. Consequently, the court need only engage in a limited analysis of the claims at issue. *See In re Ramm Industries, Inc.*, 83 B.R. 815, 822 (Bankr.M.D. Fla.1988). The court *must not*, when determining whether there is a bona fide dispute, *resolve* any genuine issues of fact or law. If the court determines that there is indeed a bona fide dispute, this ought not be construed as an indication of how the court would resolve that dispute. *In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich. 1986).

Three (3) of the four (4) petitioning creditors in this case have judgments of record which form the basis for the claims against alleged debtors. Bank One Cleveland has a confessed judgment and Century Surety Company and Alliance Indemnity Insurance Company have default judgments.

■ Relatively few cases have dealt with whether a claim which arises out of a judgment is subject to bona fide dispute. The few cases which have considered the matter have relied upon the general principle that such claims are *not* subject to bona fide dispute. *See, e.g., In re Raymark Industries, Inc.*, 99 B.R. 298, 300–01 (Bankr.E.D.Pa.1989); *In re Caucus Distributors, Inc.*, 83 B.R. 921, 923 (Bankr.E. D.Va.1988); *In re Schiliro*, 64 B.R. 422, 425 (Bankr.E.D.Pa.1986).

These cases offer little or no explanation for this general principle but rely instead on the leading case of *In re Drexler*, 56 B.R. 960, 967 (Bankr.S.D.N.Y.1986), which appears to be the only reported case to offer any rationale in support of the principle. In *In re Drexler*, the court held that a claim based upon an unstayed judgment as to which an appeal was pending was not subject to bona fide dispute. *In re Drexler*, 56 B.R. at 967. The court reasoned and concluded that:

It would be contrary to the basic principles respecting, and would effect a radical alteration of, the longstanding enforceability of unstayed final judgments to hold that the pendency of the debtor's appeals created a "bona fide dispute" within the meaning of Code § 303.

*Id.*

While this Court does not find fault with the application of this general principle in *Drexler*, its application in the case at hand would be inappropriate. The present case is distinguishable from *Drexler* in several critical respects. The judgments in *Drexler* were entered after several evidentiary hearings had been held. At one of those hearings, Drexler admitted on the record that he was liable in the actions which resulted in judgments being entered against him. In the present case, no hearings at all were held prior to the entry of the judgments against alleged debtors. Also, at no time did alleged debtors in this case admit liability in the court which entered judgments against them. Additionally, the counterclaims asserted in *Drexler* were patently frivolous and had nothing whatever to do with Drexler's alleged liability. The same cannot be said of the so-called "counterclaim" asserted by alleged debtors in their response to the involuntary petition. It is not patently frivolous and relates directly to alleged debtors' purported liability.

Like virtually every legal principle, the *Drexler* holding is not without exception. It is possible, where circumstances so dictate, for there to be a bona fide dispute even when the claim arises from an unstayed, unappealed judgment of record. Such a determination depends on the specific facts of a case. To hold otherwise would, in certain instances, enable creditors to use the threat of involuntary bankruptcy as a weapon to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor. The Bankruptcy Code was enacted by Congress to serve as a shield for debtors, not as a sword for creditors. *See In re McDonald Trucking Co., Inc.*, 76 B.R. 513, 516 (Bankr.W.D.Pa.1987).

■ The disputes in this case concerning the debts owed by alleged debtors to petitioners appear bona fide. The circumstances presented compel the conclusion that genuine issues of material fact exist with respect to alleged debtors' liability, despite the uncontested, unstayed, unappealed judgments of record which gave rise to the debts.

Alleged debtors were guarantors on notes executed and delivered by Shaker Mechanical Corporation to petitioners. As guarantors, alleged debtors were *secondarily,* as opposed to primarily, liable in the event of default by Shaker Mechanical. *See Homewood People's Bank v. Hastings,* 263 Pa. 260, 106 A. 308, 309 (1919).

Judgment was taken against alleged debtors by Century Surety and Alliance Indemnity Insurance when Shaker Mechanical defaulted on its obligations under the promissory notes. While alleged debtors did not contest liability when these judgments were entered against them, they raised objections at the hearing on the present matter which indicate that there are genuine issues of material fact which bear upon their liability.[1]

Milo Prisuta testified at the hearing that alleged debtors did not contest liability in the first instance because Shaker Mechanical, which was primarily liable on the promissory notes, had approximately $4,000,000.00 in unfinished jobs pending when Shaker Mechanical filed for bankruptcy on August 1, 1989. According to alleged debtors, it was expected that Shaker Mechanical would earn sufficient revenues from completing the jobs to enable it to satisfy the obligations alleged debtors had guaranteed and any judgments against them. Shaker Mechanical, however, ceased operations shortly after it filed for bankruptcy and was unable to satisfy its obligations.

Alleged debtors have averred, both in their objection to the involuntary petition and at the hearing on their objection, that Shaker Mechanical was unable to complete the jobs (and thus was unable to generate revenues to satisfy the judgments subsequently entered against alleged debtors) because petitioners tortiously interfered with Shaker Mechanical's contractual rights with others.

Specifically, alleged debtors claim that Century Surety, Alliance Indemnity, and National American Insurance convinced other creditors on certain jobs not to pay current and due accounts to Shaker Mechanical and convinced vendors and suppliers not to do business with Shaker Mechanical. Alleged debtors also contend that these same petitioners seized and unlawfully converted, without obtaining prior court approval, materials which Shaker Mechanical had purchased for specific jobs. In addition, alleged debtors claim that petitioners mismanaged completion of these jobs by retaining a contractor to finish the jobs whom they controlled and who lacked the skills required to complete the jobs. Finally, alleged debtors claim that petitioning creditors had a right and obligation to collect approximately $1.1 million in accounts receivable but failed to do so.

These allegations raise genuine issues of material fact in that, if true, alleged debtors' liability to these petitioning creditors arguably may be satisfied. At the very least, it cannot be said that alleged debtors, were they to seek to open the above judgments on the basis of these allegations, would not be successful in contesting their liability as guarantors. Petitioners have not shown, to the court's satisfaction, that alleged debtors' efforts in that regard would be fruitless.

The involuntary petition brought by petitioners will be dismissed because the claims of Century Surety, Alliance Indemnity Insurance, and National American Insurance are subject to bona fide dispute.

An appropriate Order will be issued.

---

1. Although the objections were denominated as "New Matter In Nature Of Counterclaim" in alleged debtors' inartfully drawn answer to the involuntary petition, it does not appear that they indeed are asserting counterclaims. Rather, alleged debtors are contesting the claims which petitioners have against them and which arise out of the above judgments.